UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEBRA A. GEORGE,

           Plaintiff,

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

           Defendant.

Case No.  C04-5184FDB

REPORT AND
RECOMMENDATION

Noted for September 16, 2005

      This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrate Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter has been briefed by the parties.  The undersigned now submits the following report, recommending that the Court affirm the administration's decision to deny plaintiff's request for social security benefits.

## INTRODUCTION

      Plaintiff, Debra George, is approximately 48 years of age.  The record indicates that claimant has a high school education with past relevant work as a mill worker, and from 1990 through 1999 she worked at Klein Bikes, where she assembled bicycles.  Plaintiff alleges she has been unable to work since April 1999, due to Obsessive Compulsive Disorder ("OCD"), forgetfulness, inability to drive, inability to stand or sit for long periods of time, and an injury to her hip bone.  Tr. 47.

      Plaintiff filed an application for Disability Insurance Benefits and a period of disability on August

1  29, 2001. Tr. 12.  The Commissioner denied her initial application on January 15, 2002, (Tr. 19), and again

2  upon reconsideration on March 20, 2002. Tr. 24.  Following proper notice, a hearing was held on April 16,

3  2003, before an administrative law judge ("ALJ").  Tr. 232-249.  The ALJ issued a decision denying

4  claimant's application on June 25, 2003. Tr. 12-16A.  Claimant made a timely request for review to the

5  Appeals Council on August 12, 2003.  Tr. 230-1. The Appeals Council denied claimant's request for

6  review on February 2, 2004, thereby exhausting claimant's administrative remedies. Tr. 5-6.

7       Plaintiff brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as

8  amended, 42 U.S.C. § 405(g), to obtain judicial review of the final decision denying plaintiff's application

9  for benefits.  Plaintiff specifically contends the ALJ's finding at step-four of the evalaution process  – that

10  she retains the residual functional capacity to return and perform her past relevant work – is not properly

11  supported by evidence in the record.

12  ## DISCUSSION

13       The Commissioner's decision must be upheld if the ALJ applied the proper legal standard and the

14  decision is supported by substantial evidence in the record.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th

15  Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant

16  evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales,

17  402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla

18  but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

19  Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational

20  interpretation, this Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579

21  (9th Cir. 1984).

22       At step-four in the evaluation process, the ALJ must determine if an impairment(s) prevents the

23  claimant from doing past relevant work and thus, must determine the claimant's residual functional

24  capacity ("RFC").  If the ALJ finds that the claimant has not shown that she is incapable of performing past

25  relevant work, the claimant is not disabled for social security purposes and the evaluation process ends at

26  this point.  20 C.F.R. § 404.1520(e).  Plaintiff bears the burden to establish that she cannot perform past

27  relevant work.  Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1356 (1996).

28       Here, the ALJ found plaintiff capable of working as a mill worker and/or bicycle assembler. The

ALJ wrote:

Steps four and five require a determination of whether the claimant has retained the residual functional capacity to perform past relevant work, or other work existing in significant numbers in the national economy. In order to make these determinations, it is necessary to assess the claimant's mental and physical residual functional capacity. Residual functional capacity is what an individual can still do despite the limitations from his or her impairments.

The claimant testified that she stopped working because of an obsessive-compulsive disorder. She said that she could not sit, drive, keep accurate count of things, and that she would wander off. She said that it was hard for her to get to work, her knees would "go" and it was hard for her to stand. The claimant said that she did not like to be alone, but she was afraid people would hurt her, and she worried a great deal. She said that she compulsively checked her stove, windows, and doors, and was unable to concentrate enough to read.

In assessing the claimant's residual functional capacity, consideration must be given to subjective allegations. This raises the issue of credibility. In judging the credibility of the claimant, the undersigned has weighed her testimony and, in doing so. considered all of the circumstances under which she has testified; the extent to which she is contradicted or corroborated by other credible evidence; her prior work record; the nature of her symptoms and medical treatment; her daily activities; and any other factors concerning the claimant's functional limitations and restrictions (20 C.F.R.§404.1529 and SSR 96-7p).

Here, the claimant's statements concerning her impairments and limitations are not entirely credible in light of information contained in the medical reports and other evidence of record.

In June 2000 the claimant had a medical examination. At that time she weighed 227 pounds, but she had no impairment other than her morbid obesity and other mild symptoms (exhibit 7F:4-5). At that time she alleged some anxiety and panic attacks, treated with Paxil (exhibit 7F:3). In September 2001 the claimant alleged that she had exacerbation of her obsessive thoughts when she was off Paxil (exhibit 10F:2). That report shows that the claimant's OCD is adequately managed when she complies with medication.

Saritha Reddy, M.D., examined the claimant in December 2001. The claimant alleged obsessive-compulsive thoughts, worries, compulsive, repetitive actions, anxieties, concentration problems, fatigue, and panic attacks (exhibit I 2F). She asserted that she was somewhat socially avoidant although she talked to people on the phone and visited with her husband's friends when they visited (exhibit 12F:4). The claimant presented as somewhat anxious but her mental status was intact and her concentration, memory, and cognition were not impaired (exhibit 12F:3).

Dr. Reddy diagnosed OCD and social anxiety disorder, and rated her GAF at 60 (exhibit 12F:4). Dr. Reddy concluded that the claimant could perform simple, repetitive tasks and probably more detailed and complex tasks. She might have difficulty with co-workers and the public, maintaining regular attendance, performing on a consistent basis, and dealing with work stresses (exhibit l2F:4).

In January 2002 the claimant was seen at Steck Medical Group for complaints of anxiety and obsessive thoughts. She began treatment with Celexa, and within a few days she reported that she was better (exhibit 1 3F~2-4). Again, this report shows that the claimant's symptoms are relieved when she complies with her treatment.

The claimant began treatment at Cascade Mental Health Care in January 2002. She described anxiety, physical pains, and obsessive thoughts (exhibit 14F). But her mental status examination was not particularly remarkable; the claimant had no significant difficulty with daily living activities, her attention span and memory were good, and she was not assessed with any significant social difficulty (exhibit l4F:8-12).

In February 2002 Saowarut Kittimongcolporn, M.D., examined the claimant and she reiterated these symptoms, but her mental status examination was good (exhibit 14F:1-2). Dr. Kittimongcolporn diagnosed panic disorder, anxiety disorder, and obsessive-compulsive disorder, and rated her OAF at 50 (exhibit 14F:3). That report is considered, but the claimant's mental status examinations do not appear to be consistent with such a low OAF level.

The claimant stated that she was 5/1" tall and weighed 242 pounds, and her obesity is discussed throughout the record. But there are few signs of significant problems related to her obesity. She has been able to move about without difficulty. The claimant has alleged past low back pain, but examinations and clinical studies were essentially normal, at most showing only mild findings without neurological impact (exhibit 11F). M.W. Strohbach, M.D., reported in November 2001 that the claimant had chronic low back pain and difficulty sitting or standing, by her report, and subjective right arm numbness. But her examination was normal (exhibit 11F:1-3). The claimant's obesity and alleged back pain are not severe impairments.

The claimant has a history of chronic urinary frequency related to cystitis; treated successfully with medication (exhibits 1F; 4F; 5F). A CT scan in August 2001 showed that the claimant had some fatty liver infiltration, uterine enlargement, and she was status-post cholecystectomy (exhibit 9F:2). But the claimant did not have significant symptoms and these impairments are not severe. The claimant also has reported severe headaches from time to time (exhibit 6F). but there is little evidence of significant chronic limitations from her headaches. She does not have a severe headache disorder. Other disorders are mentioned in the record (exhibit l8F) but they are not severe or did not last for the 12-month duration requirement.

These reports suggest that the claimant has some medical impairments and limitations, but not to the point of disability. Other evidence supports that conclusion.

The claimant told Dr. Reddy that she took the pets out for walks and prepared meals, and managed her personal care (exhibit l2F). Other medical reports suggest that the claimant has no problem with daily activities (exhibit I 4F).

Third party reports have been considered. The claimant's mother reported that the claimant had social difficulties, fears of being alone conflicting with anxiety when around others, deficits in memory and concentration, and suspiciousness of others (exhibits 6E; 8F). These reports are considered credible to the extent that they are consistent with the medical evidence reviewed above. The evidence suggests that the claimant has some difficulty with the public, but the medical reports indicated that she can relate to others as necessary, she can leave the home, and her mentation and cognitive functioning is intact.

With respect to mental impairments, another DDS source, Janis Lewis. Ph.D.. reviewed the claimant's file in January 2002 and reported that she had reported OCD and a provisional somatoform disorder. These impairments caused moderate limitations in daily living activities, social functioning, and concentration, persistence, or pace. There were no episodes of decompensation (exhibit 1 SF). With respect to specific limitations, Dr. Lewis reported that the claimant could perform simple and some complex tasks, and work away from the public; she could sustain attention for two hours and adapt to changes if they were infrequent and not sudden (exhibit 16F). The DDS assessment is consistent with the evidence and is given great weight.

Based on an evaluation of the credible evidence, the undersigned finds that the claimant has retained a residual functional capacity without physical limitations. She can understand, remember and carry out simple instructions and make simple work-related decisions necessary to function in unskilled work; respond appropriately to supervisors, co-workers, and usual work situations; and deal with changes in a routine work setting (not dealing with the general public). That assessment is consistent with the DDS evaluation.

Consideration must next be given to the question of whether the claimant retains the residual

functional capacity to return to her past relevant work. Born on August 24, 1956, the claimant has a high school education and some college. The claimant has reported past work in a mill, on the green chain and as a veneer puller. She also did various jobs in bicycle manufacturing.

At the hearing, a vocational expert, Mary Minton, M.A., testified that the claimant's past work in bicycle assembly was unskilled, light work; she worked in a mill as green chain puller (medium, unskilled work) and veneer puller (medium-heavy, unskilled).

The evidence supports a finding that the claimant's past work as a mill worker and in bicycle assembly did not require the performance of work activities precluded by her medically determinable impairments, and that she has continued to be able to work in those occupations. She can thus return to the type of work she performed in the past. Because the claimant can return to past relevant work, she is not disabled within the meaning of the Social Security Act. It is therefore unnecessary to consider the remaining step in the sequential evaluation process.

Tr. 13-16.

At the hearing the ALJ, in the presence of the vocational expert, questioned Ms.George about her past work experience.  (Tr. 237-240).  After taking Ms. George's testimony, the ALJ questioned the vocational expert.  The ALJ specifically asked the expert whether or not she had enough information about the two jobs Ms. George worked in the past (Tr. 246) and the expert classified the two positions as light, unskilled work (bicycle assembly) and medium, unskilled work (mill worker)(Tr. 247-248).

As noted above, the ALJ reviewed the medical evidence, along with plaintiff's subjective complaints, and concluded she did not have any physical limitations and despite some non-exertional limitations, she retained the ability to perform unskilled work.   The opinions of Dr. Reddy and Dr. Lewis support the ALJ's analysis. Dr. Reddy found plaintiff could complete three step commands and rated her global functioning at the high end of moderate.  Dr. Reddy also predicted that she would improve with treatment over nine to twelve months (Tr. 180). Dr. Reddy concluded Plaintiff could perform simple and repetitive tasks, perhaps more complex tasks, and accept instruction from supervisors, but might have trouble with consistency, attendance, and interacting with coworkers and the general public (Tr. 180).  Dr. Lewis rated her as moderately impaired in daily activities, concentration, and social functioning (Tr. 210) and he determined that plaintiff could perform regular work, away from the public, performing simple and sometimes complex tasks, sustaining attention in two hour intervals and adapting to changes that are not too sudden or frequent (Tr. 216).  Both opinions support the ALJ's decision.


## CONCLUSION

The ALJ's finding that Ms. George is capable of returning to work as a mill worker or bicycle

1    assembler is properly supported by substantial evidence.  Therefore, the Court should affirm the

2    administration's decision.

3    　　　　Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties

4    shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.

5    Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn,

6    474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set

7    the matter for consideration on **September 16, 2005**, as noted in the caption.

8    　　　　DATED this 26th day of August, 2005.

9    　　　　　　　　　　　　　　　*/s/ J. Kelley Arnold*　　　　　　　　
　　　　　　　　　　　　　　　　J. Kelley Arnold

10   　　　　　　　　　　　　　　U.S. Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 6